Exhibit M

Case 3:02-cv-02193-MRK   Document 37-22   Filed 04/20/2004   Page 1 of 12

```
 1                UNITED STATES DISTRICT COURT
 2                  DISTRICT OF CONNECTICUT
 3
 4  DUPONT AUTHENTICATION SYSTEMS,  ) CIVIL ACTION NO.:
    LLC,                            ) 3:02 CV 2193(MRK)
 5                                  )
                   PLAINTIFF,       )
 6                                  )
          VS.                       )
 7                                  )
    JAKKS PACIFIC, INC.,            )
 8                                  )
                   DEFENDANT.       )
 9  _____)
10
11
12
13
14
15                     DEPOSITION OF
16                     STACEY PAULY
17                   MALIBU, CALIFORNIA
18                   FEBRUARY 4, 2004
19
20
21  ATKINSON-BAKER, INC.
    COURT REPORTERS
22  330 North Brand Boulevard, Suite 250
    Glendale, California  91203
23  (818) 551-7300
24  REPORTED BY: JULEE SOKOL, CSR NO. 11319
25  FILE NO.:   9E00786
```

**CERTIFIED COPY**

1

```
 1                       STACEY PAULY,
 2          having first been duly affirmed, was
 3          examined and testified as follows:
 4
 5                       EXAMINATION
 6   BY MR. TREMBICKI:
 7       Q.    Would you state your name and address for the
 8   record, please?
 9       A.    Stacey Pauly.
10             Home address?
11       Q.    Yes.
12       A.    1957 Pelham Avenue, Number Four, Los Angeles,
13   California 90025.
14       Q.    Before we get started, for the record, attorney
15   Ezio Scaldaferri, from the firm Feder, Kaszovitz,
16   Isaacson, Weber, Skala, Bass and Rhine, is here on behalf
17   of defendant Jakks Pacific.
18             They do not officially have an appearance in the
19   case but have been corporate counsel for Jakks and are
20   here defending the deposition pursuant to Notice.
21             Is that correct, Sir?
22       MR. SCALDAFERRI:  That's correct.  And Mr. Robbins of
23   our firm will be entering an appearance, pro hoc, as soon
24   as he gets around to filing the motion.
25       Q.    BY MR. TREMBICKI:  Ms. Pauly, my name is Alex
```

6

1  Q.  BY MR. TREMBICKI:  Let me just ask you
2  personally if you would just take a look through that
3  schedule and tell me if there are any records that you
4  maintain, aside from records which may have already been
5  given to your attorneys, which would be responsive to
6  that request?
7  A.  I've provided everything that was asked of me.
8  Q.  Okay.  All right.  Ms. Pauly, where are you
9  employed?
10  A.  Jakks Pacific.
11  Q.  And what do you do there?
12  A.  I'm Vice President of Marketing.
13  Q.  And how long have you been with Jakks Pacific?
14  A.  Since October 19th, 1999.
15  Q.  And how long have you been the Vice President of
16  Marketing?
17  A.  Since August 1st of 2003.
18  Q.  And prior to August 1st of 2003, what did you do
19  for Jakks Pacific?
20  A.  I handled all the marketing for -- gosh.  All
21  the brands now that I think about it.
22  Q.  And what is the business of Jakks Pacific?
23  A.  It is a toy company.
24  Q.  And prior to August 1st of '03 till the time
25  that you began at Jakks Pacific, was that -- when you say

9

1 working together on the W.W.F. account?
2      MR. SCALDAFERRI: Excuse me.
3      Q.   BY MR. TREMBICKI: Or the W.W.E. account?
4      A.   No. When she left, I took over.
5      Q.   And when you say working with the W.W.F.
6 account, tell me what that account is.
7      A.   I called it an account. I mean it's a brand.
8           Working alongside the product development team.
9 Knowing what they're doing. Making sure it's in line
10 with what W.W.F. wants. Everything matches. It's in
11 line with programming. Just monitoring what's going on.
12 Working with them as licensors.
13     Q.   Okay. So is it fair to say that Jakks is a
14 licensee of the W.W.F. or was a licensee of the W.W.F.?
15     A.   Yes.
16     Q.   Okay. And what does that mean to be a licensee
17 of the W.W.F.?
18     A.   It means that we are the official
19 manufacturers -- we can officially distribute and
20 manufacture products that bear the W.W.F. name.
21     Q.   Okay. And then it became --
22     A.   W.W.E.
23     Q.   We're talking about the W.W.E. as well and the
24 W.W.F. is the World Wrestling Federation?
25     A.   Yes.

```
 1      Q.   And Jakks manufactures what sorts of toys for
 2  the W.W.F. or the W.W.E.?
 3      A.   Action figures and accessories.
 4      MR. SCALDAFERRI:  Late objection to the form of the
 5  question.  But it's okay.
 6      Q.   BY MR. TREMBICKI:  Now, there came a time, did
 7  there not, where you contacted DuPont Authentication
 8  Systems to order some holographic labels?
 9      A.   Correct.
10      Q.   Had you ever had any dealings with DuPont prior
11  to January 16th of 2002?
12      A.   No.
13      Q.   How did you decide to -- what made you contact
14  them?
15      A.   Hong Kong told me that we were running low on
16  stickers, and I knew we needed to order stickers.  I
17  don't recall where I got the contact from.
18      Q.   Do you know whether or not Jakks had ever done
19  business with DuPont Authentication or Label Systems
20  prior to your contacting DuPont?
21      A.   Yes.  We had.
22      Q.   And had you been involved in any of those
23  transactions -- well, withdrawn.
24           Had you been involved in any of the business
25  between Jakks and DuPont or Label Systems prior to
```

```
 1       MR. TREMBICKI:  I'm asking what the words are.
 2       MR. SCALDAFERRI:  The words are reflected in the
 3  documents.
 4       MR. TREMBICKI:  Okay.  She can answer.
 5       MR. SCALDAFERRI:  Answer what?  What's the question?
 6  I'm not going to let her answer what your client thought.
 7       If you want to please rephrase the question.
 8       Q.   BY MR. TREMBICKI:  Read those words to me,
 9  Ms. Pauly.
10       A.   "Hi Stacey and thank you for the order."
11       Q.   Okay.  Do you understand --
12       MR. SCALDAFERRI:  Read the whole thing, Stacey.
13       THE WITNESS:  "Hi Stacey and thank you for the order.
14  Just your standard P.O. information:  Bill to, Ship to,
15  Shipping method, and requested delivery dates will be
16  fine.  You are credit approved for the order.  Thanks
17  again."
18       Q.   BY MR. TREMBICKI:  Okay.  Did you understand
19  that DuPont would then produce ten million stickers for
20  you?
21       A.   No.
22       Q.   Why not?
23       A.   Because in order to place an order, my
24  understanding is that they would need bill to, ship to,
25  shipping method, and requested delivery dates, and they
```

29

1  never got any of that from me.
2      Q.   Did anyone at Jakks ever provide any of that
3  information to DuPont?
4      A.   I don't know.
5      Q.   Do you know whether -- what the pricing was for
6  the prior orders between DuPont and Jakks at least at the
7  time that you issued that e-mail?
8      A.   I don't know.  I don't recall.
9      Q.   Were you expecting DuPont to get back to you
10 with a price?
11     A.   I don't recall.
12     Q.   And were you aware of where DuPont had shipped
13 labels that Jakks Pacific ordered in the past at the time
14 that you issued the e-mail?
15     A.   No.
16     Q.   And were you aware -- you weren't aware of the
17 pricing?
18     A.   No.  No.
19     Q.   And you weren't aware -- well, withdrawn.
20          Were you -- did you have any knowledge or
21 information as to DuPont's ability to fulfill your order?
22     A.   My understanding was that DuPont was the company
23 from whom we received the stickers before -- we purchased
24 the stickers before.  And it would have just been all of
25 the same circumstances, the same pricing, the same

1  a P.O. or an address or anything."
2  He writes back, again, on the 31st a little
3  later, "All of them, I have asked for samples. He told
4  me they did the same as last time W.W.F. He did state he
5  had no P.O. and printed them on May 1st. Did you talk to
6  him then? I did tell him he totally surprised me." And,
7  "He did send them to the old Hong Kong address." Okay.
8  Then we go back again to your -- there is a
9  little further up, May 31, '02, 8:55 A.M. "I haven't
10 spoken to George since January."
11 Well, now, you e-mailed him -- you spoke to him
12 before you e-mailed him in January; correct?
13      A.   Uh-huh.
14      Q.   And then you e-mailed him in January?
15      A.   Uh-huh.
16      Q.   And then I believe your testimony was you spoke
17 to him at some point; although, you can't be precise as
18 to when --
19      A.   Yeah.
20      Q.   -- concerning the change over; is that right?
21      A.   I spoke with someone.
22 MR. SCALDAFERRI:   Okay.
23      Q.   BY MR. TREMBICKI:   Okay. And they did not know
24 about the change over, I think your testimony was.
25      A.   Correct.

63

1  Q. Then you go on to say, "But I think that George
2  might be trying to pull a fast one on us, knowing that
3  they're no longer the sticker vendors."
4  What did you base that on?
5  A. He sent 10 million stickers based on no order.
6  So if they're all the wrong sticker, then to me, it means
7  he must be trying to get rid of his inventory since
8  they're no longer the sticker vendors. They're useless
9  to him.
10 Q. And do you know whether DuPont had these
11 stickers in inventory, or they specially produced them or
12 anything like that?
13 A. I don't know.
14 Q. Okay. And then Mr. Rickelmann says he's going
15 to get back to you, and the next e-mail, January 27th, is
16 from you to Mr. Rickelmann indicating that Hong Kong ran
17 out of the stickers. All right.
18 If I understand correctly, Ms. Pauly, your
19 position is that there was never a purchase order issued
20 by Jakks for these stickers --
21 A. Correct.
22 Q. -- correct?
23 A. Correct.
24 Q. And that, therefore, any stickers that were
25 produced by DuPont were DuPont's problem because there

75

9E00786     2/20/04

LETTER TO DEPOSITION OFFICER-ERRATA SHEET

DEPOSITION OF: STACEY PAULY

DATE DEPOSITION:     FEBRUARY 4, 2004

CASE NAME: DUPONT AUTHENTICATION SYSTEMS, LLC vs.

JAKKS PACIFIC, INC.

Following are the corrections which I have made to my transcript:

| PAGE# | LINE# | CORRECTION | REASON FOR CORRECTION |
|---|---|---|---|
| 35 | 19 | There are shipping | not the words I used |
| 35 | 23 | ...if there are any sort... | not the words I used |
| 36 | 11 | there are various factories... | not the words I used |
| 37 | 25 | There are a lot... | not the words I used |
| 40 | 5 | ...,she was one of them. | not the words I used |

I, the undersigned, declare under penalty of perjury, that I have read the above-referenced deposition transcript and have made any corrections, additions or deletions that I was desirous of making; that the transcript contains my true and correct testimony.

EXECUTED this _2nd_ day of _March_, 20 _04_

at _Los Angeles_, _CA_
        (City)              (State)

(Deponent)

```
 1  STATE OF CALIFORNIA        )
                               ) SS.
 2  COUNTY OF _____  )

 3

 4

 5

 6

 7        I, the undersigned, declare under penalty of
 8  perjury that I have read the foregoing transcript, and I
 9  have made any corrections, additions or deletions that I
10  was desirous of making; that the foregoing is a true and
11  correct transcript of my testimony contained therein.
12        EXECUTED this 2 day of March, 2004, at
13  Los Angeles    CA                  .
          [City]      [State]
14
15
16
17  _____
              STACEY PAULY, Witness
18
```

82