UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
-------------------------------------------------------------------------x

DUPONT AUTHENTICATION SYSTEMS, LLC..,

                              Plaintiff,                    302 Civ. 2193 (MRK)

      - against -

JAKKS PACIFIC, INC.,

                              Defendant.

-------------------------------------------------------------------------x

## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

    The facts material to this motion are not disputed – they are contained in documents – and, as summarized below, clearly demonstrate that there was never any intent to enter into the contract which plaintiff alleges. The applicable law also is (or should be) undisputed; whether individuals or merchants are involved, and regardless of whether all the terms are identified, the critical question still remains whether both parties exhibited an intent to be bound. Here they did not, and thus the complaint should be dismissed.

**I.**

On January 15, 2002, a young woman new to the department (Stacey Pauley) asked a vendor for information about the labels he had provided to her employer in the past. The vendor faxed her precisely such "Label information" and, since she was obviously not familiar with the product, advised that "if you would like samples of the labels please let me know." PX B[1].

She did not request a sample. Instead, the next day, January 16, she e-mailed him requesting further information: "I will [in the future] need to place an order for [the] stickers. Please let me know what you need from me to place the order." (PX E). To this, the vendor responded: "Hi Stacey and thank you for the order. Just your standard PO information: Bill to, Ship to,. Shipping method, and requested delivery dates: will be fine. You are credit approved for the order." Id.

While, according to plaintiff, "at that moment, the contract between the parties had been created" (Plaintiff's Memo In Opposition, p. 10), there was, in fact, no contract for the very simple reason that this exchange does not evince an intent by Ms. Pauley to be bound or to enter into a contract, and it does not represent or reflect a meeting of the minds. Rather, what the written exchange clearly and unequivocally evinces is but an inquiry as to what would be needed to place an order in the future: "*I will need to place*

---

[1] References to "PX __" are to Plaintiff's exhibits annexed to the affidavit of Alexander Trembicki Esq. in opposition to the motion. References "DX __" are to Defendant's exhibits annexed to the affidavit of Bruce Robins Esq. in support of the motion.

*an order . . . please let me know what you need . . . .".* This can in no way be interpreted as a direction to the vendor that he produce and deliver the labels. To the contrary, it is but a statement that in the future there may be an order forthcoming, and an inquiry as to what that order should contain. The exchange – and particularly Ms. Pauley's e-mail – is simply not a "contract" and the vendor just could not unilaterally impose a contract on the other side by saying "thank you" for a non-existent order.

The law is not to the contrary, as plaintiff suggests. As noted in our moving memorandum, it is a "fundamental tenet of contract law that enforceable legal rights do not arise from contract negotiations until *both* parties consent to be bound, or, in any event, *manifest* that intent to each other." Chrysler Capital Corp. v. Southeast Hotel Properties Limited Partnership, 697 F.Supp. 794, 799 (S.D.N.Y. 1988), aff'd 888 F.2d 1376 (2nd Cir. 1989)(citation omitted), cited with approval in Retrofit Partners I, L.P. v. Lucas Industries, Inc., 47 F.Supp.2d 256, 265 (D.Ct. 1999), aff'd 201 F.3d 155 (2d Cir. 2000). Here, the statement *"I will need to place an order . . . please let me know what you need . . . ."* cannot possibly be interpreted as a manifestation or consent to be bound.

The Uniform Commercial Code sections relied on by the plaintiff do not change this basic tenet of contract law. In fact, Section 2-204 *confirms* that intent to be bound and a manifestation of such intent is fundamental to the formation of a contract:

> (1) A contract for sale of goods may be made in any manner *sufficient to show agreement*, including conduct by *both* parties which *recognizes the existence of such contract*. . . .
>
> (3) Even though one or more terms are left open a contract . . .

>    does not fail . . . *if the parties have intended to make a contract . . .*.

Conn. Gen. Stat. Sec. 42a-2-204 (emphasis added).

Here, no one can reasonably contend that the undisputed facts set forth above "show agreement" or show that both parties "intended to make a contract." Again, the statement upon which plaintiff bases its entire claim, Ms. Pauley's e-mail advising *"I will need to place an order . . . please let me know what you need . . .."* cannot possibly be interpreted as an "agreement" or as a manifestation or intent to be bound. The inquiry need go no further.

What plaintiff would do here is turn the law on its head. Thus, plaintiff contends that its unilateral decision that there was an "order" ("Thank you for your order") in some inexplicable way exhibited or manifested *defendant's* intent to enter into a contract, or somehow otherwise bound defendant or obligated defendant to take positive action to free itself of the "contract" imposed on it by plaintiff. That is just absurd!

In short, Ms. Pauley's inquiry and plaintiff's response simply did not create a contract, as plaintiff alleges.

Beyond this, the undisputed documentary records of what followed this exchange further confirm that both sides, and certainly defendant, understood that no contract had been created. Put another way, there was no "conduct by *both* parties which *recognizes the existence of such contract. . . .* " sufficient to form a contract under UCC 2-204.

Thus, on January 17 – one day after plaintiff claims a contract had been formed –

Ms. Pauley wrote the vendor not to reconfirm any existing order, or even to place an order, but to inform him that she still did not have the information he had told her she needed to provide to him in a purchase order when she eventually would place it: "Hi George, Hang tight, I'm waiting to hear from Hong Kong regarding their shipping requirements and whatnot." DX F.

George (the vendor) did not respond by saying "I don't need anything, the order is proceeding;" rather, openly acknowledging that no order had been placed and no contract had been entered into, he solicited her again on January 22, when he wrote: "Hi Stacey, Just wanted to touch base with you . . . please let me know if you have any questions." Id.[2]  Ms. Pauley's retort again confirmed that no contractual relationship had been established, for she merely reiterated that she still did not have the information required for her to even place an order: "no questions, just no specific information from Hong Kong yet." Id.

In fact, her next (and final) inquiry came the next day, January 23, and yet again clearly and unambiguously exhibited but a continuing inquiry regarding the basic

---

[2] Of course, the vendor's eagerness to obtain the order does not, by itself, create a contract. Similarly, the fact that on January 17 the vendor obtained the WWF's consent to allow plaintiff do this job if the order were placed since its contract with WWF was to expire on January 31, 2002 (PX F), shows only plaintiff's eagerness and desire to secure a contract. It has nothing to do with, and does not in any evidence an intent to be bound or an agreement by defendant. Indeed, plaintiff's reliance on this approval is perplexing: if plaintiff had already secured a contract which bound it to deliver 10 million labels by January 31 (as it contends) why would it only attempt delivery four months later in May, and why would the purchaser (defendant) not inquire as to the whereabouts of the goods in February, March and April? The answer is simple: there was no contract, but rather only an expectation that one would be forthcoming in the future!

components of an eventual contract, not a confirmation of an existing one.  Thus, in asking "Hi there, what is the lead time for materials?" (id.),  Ms. Pauley was clearly advising that she was still in the preparation stage, and was attempting to determine how much lead time she would have to give the vendor if and when she placed an order[3].  This is just not conduct which in any way confirms the existence of a contract; rather, objectively viewed, it is just the opposite!

In addition, plaintiff's own undisputed statements and conduct confirm that it, too, understood that neither party had bound itself to a contract, but had only discussed an order that   might be forthcoming in the future.  First, plaintiff never even attempted to make the January 31 delivery which it claims was part of the its contract.

More importantly, on April 3, 2002  – months after plaintiff now conveniently alleges a contract had been formed and an order had been placed  – plaintiff candidly admitted that no order had ever been placed, and that in fact an order had only been discussed.  On that day, George wrote: " I spoke with Stacey at Jakks today and she told me that all of her orders are on hold because of the WWF logo changes so she *will not be placing an order* for the 10 million stickers as she verbally requested."  DX G.  No matter

---

[3] Plaintiff's reliance on the fact that Ms. Pauley eventually sought and obtained the approval of defendant's president to place an order (Mem. in Opp., p. 10) is misplaced.  First, that fact was never even communicated to plaintiff and thus could have had no effect.  Second, that Ms. Pauley later secured the "go ahead" from her superior to place an order when needed, simply has nothing to do with whether days earlier she had already entered into a contract, as plaintiff now contends.  Third rather than showing an intent to be bound to a contract previously entered into, such approval merely reflects Ms. Pauley's continuing preparation to eventually placing an order, as she has consistently maintained and as reflected in her written communications to plaintiff and others.

6

what semantic exercise plaintiff engages in to describe this as a mere "terminology issue" (Mem. in Opp., p. 13), the simple fact remains that the statement unambiguously states that Mr. Pauley "will not be placing an order"and thus admits that an order had not been placed but was expected in the future; and it also quite clearly acknowledges that no order had been placed and no contract had been entered into in the past – a position exactly opposite to what plaintiff now contends.

Finally, the lack of intent to be bound is captured in Ms. Pauley's candid summary of the events, a summary created long before litigation was started. Thus, in a June 5, 2002 email, Ms. Pauley again reiterated that she had never entered into any contract: "In January, I spoke with George and told him we were going to order stickers soon. He asked me for the PO# and the shipping address and I never gave him any info because I heard that the logo was going to change soon." PX O.  This re-confirms what is manifest in the all the preceding documentation – that Ms. Pauley never entered into any contract, but merely advised that she was going to be ordering labels sometime in the future. Again, there simply was no contract.

In sum, neither the exchange of January 15 -16, 2002, nor the conduct of the parties afterwards in any way evidence that defendant ever intended to be bound by or ever entered into an agreement. These facts are set forth in undisputed documents. They compel summary judgment dismissing the complaint.

**II.**

All the arguments contained in plaintiff's Memorandum in Opposition – that terms can be provided, that immaterial terms do not defeat the existence of a contract – are based on the assumption that a contract existed in the first place. As shown above, this fundamental premise is incorrect, and thus all those arguments are of no moment and need not be addressed further.

We do note, however, that even if there were some doubt as to the intent of the parties to be bound by the January 15 - 16 exchange, there still could be no contract here. As explained in our moving memorandum, where, as here, one party expressly states the terms to be included in a contract so as to form one in the first place – which is what plaintiff did in its January 16 email advising of what would be needed in an order – and the other party does not provide those terms, there cannot be a contract.

## CONCLUSION

For all the foregoing reasons, defendant's motion for summary judgment dismissing plaintiff's complaint should be granted in its entirety.

Dated:      June 18, 2004

JAKKS Pacific, Inc., by its attorney

_____
   Ezio Scaldaferri - CT 07112 (*pro hac vice*)
c/o Feder Kaszovitz Isaacson Weber Skala
        Bass & Rhine, LLP
750 Lexington Avenue

New York, New York 10022-1200
(212) 888-8200